**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: March 29 2016**

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| In Re | ) | Case No. 15-33448 |
| | ) | |
| Affordable Med Scrubs LLC, | ) | Chapter 11 |
| | ) | |
| Debtor and Debtor-in-Possession. | ) | JUDGE MARY ANN WHIPPLE |
| | ) | |

## MEMORANDUM OF DECISION AND ORDER

Debtor filed an application to employ Patricia A. Missal and The Numbers Group (collectively "Numbers Group") as its financial advisor, nunc pro tunc to January 11, 2016, [Doc. # 124], to which FirstMerit Bank ("Bank"), Debtor's primary secured creditor, has objected, [Doc. # 135]. The court held a hearing on the application on February 8, 2016, in conjunction with a hearing on continued use of Bank's cash collateral. Attorneys for Debtor and for Bank appeared in person at the hearing and presented their arguments on the application. Missal also appeared in person at the hearing.

The district court has jurisdiction over this Chapter 11 case pursuant to 28 U.S.C. § 1334(a)

as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. A debtor's employment of professionals and the terms and conditions of employment is a matter concerning administration of the estate, which is a core proceeding that this court may hear and decide. 28 U.S.C. § 157(b)(1), (b)(2)(A).

The necessity and proposed terms of Debtor's employment of Numbers Group arise in light of the framework of the case and estate administration to date.

Debtor filed its voluntary Chapter 11 petition on October 24, 2015. Debtor primarily customizes and sells medical uniforms used by nursing students and the schools and hospitals where they work. Debtor's inventory is largely sourced from abroad. Getting a confident handle on the value of the inventory, which is part of Bank's collateral, has proved elusive thus far. No committee of unsecured creditors has been appointed.

Effective January 28, 2016, original counsel for Debtor was permitted to withdraw from the case. The court approved the employment of substitute counsel also on January 28, 2016.

The case to date has been marked by nearly monthly combat over continued use of cash collateral and uncertainty over the status, employment and compensation of upper level management for Debtor, as well as counsel, to guide the case and the business through bankruptcy court. These circumstances have not promoted a longer term focus on how to pay creditors and get Debtor out of bankruptcy. With engagement of new counsel came Debtor's application to employ Numbers Group as its financial advisor. Numbers Group's role in this case will be to use Missal's considerable expertise and experience to help Debtor get a firmer handle on the financial status and footing of the business, especially cash budgets and forecasts and other reporting, as well as to assist in the longer term prospects for restructuring and reorganization. Those prospects include addressing proposals made by Bank for payment of its debt of approximately $4.0 million, plus accrued and unpaid interest, fees and expenses. Bank has also now filed a proposed disclosure statement and plan of reorganization. [Doc. ## 171, 172].

With court approval, a trustee may employ attorneys, accountants or other professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties" under the Bankruptcy Code. 11 U.S.C. § 327(a). In a Chapter 11 case, a debtor-in-possession has the same rights, powers

and duties as a trustee, including the right to employ professionals under § 327. 11 U.S.C. § 1107(a).

Employment under § 327 may be "on any reasonable terms and conditions..., including on a retainer, on an hourly basis, or on a contingent basis." 11 U.S.C. § 328(a). In deciding whether the proposed terms of a professional's employment are reasonable, "the court must consider whether the terms are fair to the professional, the debtor, and the creditors who must bear the expense." *In re LTV Steel, Co., Inc.*, No. 01-01116, 2001 U.S. Dist. LEXIS 25338, at *4 (N.D. Ohio Nov. 14, 2001). The bankruptcy court must be persuaded that the terms and conditions are in the best interests of the estate. *In re Gillett Holdings, Inc.*, 137 B.R. 452, 455 (Bankr. D. Colo. 1991)(quoting *In re C&P Auto Transp., Inc.*, 94 B.R. 682, 686 (Bankr. E.D. Cal. 1988)). The issue is whether the particular terms are reasonable under given circumstances, and such a determination can only be made on a case by case basis. *In re Metricom*, 275 B.R. 364, 371 (Bankr. N.D. Cal. 2002). Debtor, as the moving party, bears the burden of proof by a preponderance of the evidence that the proposed terms of employment are reasonable. *Id.*

The application and Missal's declaration attached to it establish that she and Numbers Group have the necessary professional qualifications and experience to perform the services for which it is being engaged, and that it does not hold any interest adverse to the estate and is disinterested. Those facts are not in question. The court further finds from the progress and experience of the case thus far, as well as the structure and composition of Debtor's upper management, that Numbers Group's engagement and the professional services it is being engaged to render are generally necessary and appropriate, *see* 11 U.S.C. § 330(a)(1), and will be of benefit to the estate.

Missal's declaration and an engagement letter attached to the application set forth the proposed terms of employment of Numbers Group as financial advisor to Debtor. [Doc. #124, Exs. A and B]. Numbers Group would be compensated on an hourly basis with invoices issued monthly and a framework in place for objection and payment of up to 75% of fees from each invoice prior to the filing of a formal fee application for court approval on a periodic basis. Missal's hourly rate for this engagement is a reasonable $200/hour, the same as substitute counsel's hourly rate, which has already been approved, [*see* Doc. ## 101 (para. 15, p. 6/9), 130]. No retainer has been paid or is being required as a condition of the engagement.

Bank objects to Numbers Group's employment on two grounds. [Doc. # 135]. First, Bank

asserts that Debtor cannot afford to employ Numbers Group and likely will not have the cash to pay it, or presumably any other financial advisor given the reasonableness of Missal's hourly rate. Second, Bank objects to the indemnification provision in the engagement letter as unnecessary and overly broad. No other party in interest has objected to Numbers Group's employment.

As to Bank's first argument, the court generally agrees that inability to pay a professional is grounds to deny employment. Payment of administrative expenses is a condition of confirmation of any Chapter 11 plan. 11 U.S.C. § 1129(a)(9)(A). And administrative insolvency is generally in nobody's best interests. But the proposed terms of Numbers Group's engagement in this case resolve that argument here. A line item for payment of professionals has been worked into Debtor's ongoing cash collateral budgets as adopted in the series of cash collateral orders, consensual and otherwise, entered by the court in this case, including most recently on February 10, 2016, [*see* Doc. # 150]. The affected professionals are aware of the budgeted amounts and proceeding in light of them. From a cash perspective, ongoing payment of fees pending their final court approval on formal application will be limited to 75% of fees and 100% of expenses on a monthly basis. [Doc. # 135, pp. 5-6, paras. 16-17, Ex. C ]. The proposed form of order approving employment includes an informal objection procedure by which Bank can object to payment, such as if the cash collateral budget line items for all professional fees would be exceeded by payment of that 75% cap amount. In the court's view the fee procedure set forth in the application and proposed form of order provides a dual cap to protect Bank and all parties in interest from both excessive and unreasonable administrative expenses for professionals, individually and combined, as well as fees and expenses exceeding available cash on a periodic basis.

The indemnification provision to which Bank objects reads as follows:

> <u>Indemnification.</u> AMS hereby agrees to indemnify and hold harmless The Numbers Group, its officers, members, principals, employees, affiliates, independent contractors and their respective directors, officers, agents and employees (collectively, the "Indemnified Persons") from and against any and all claims, demands, suits, proceedings, judgments, awards, liabilities, losses, damages, and expenses incurred by any Indemnified Person (including but not limited to any Indemnified Person's reasonable counsel fees and disbursements and the reasonable costs of such Indemnified Person's professional time, such professional time will be reimbursed at our rates in effect when such time is required), as they are incurred, arising in connection with investigating, preparing for, or defending any action, formal or informal claim, investigation, inquiry or other proceeding, whether or not in connection with pending or threatened litigation) which are related to or arise in any manner out of the Engagement, including any legal proceeding in which any Indemnified

> Person may be required or agree to participate, but in which such Indemnified Person is not a party; provided, however, that the Indemnified Persons shall be indemnified only to the fullest extent permitted by the laws of the State of Ohio regarding acts and omissions of officers and directors of corporations incorporated under the laws of that State; provided further, however, that in no event shall any of the Indemnified Persons be indemnified for gross negligence or willful misconduct as determined by final order of a court of competent jurisdiction.
>
> Numbers shall defend, or may permit AMS to defend, any such claim, with counsel reasonably acceptable to Numbers. AMS further agrees that it shall not, without the prior written consent of the Indemnified Persons, which shall not be unreasonably withheld, settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought hereunder unless such settlement, compromise or consent includes an unconditional release of Numbers and each other Indemnified Person hereunder from all liability arising out of such claim, action, suit or proceeding. Numbers further agrees that it shall not, without the prior written consent of AMS, which shall not be unreasonably withheld, settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought hereunder.

[Doc. # 124-2, para. 6, pp. 3-4/7]. At the hearing, counsel for Debtor indicated that the Ohio statute to which the indemnification refers is Ohio Revised Code Ann. § 1729.031.

The Bankruptcy Code itself does not specifically address the validity, or lack thereof, of indemnification provisions as a term of engagement of a professional under § 328. It is now well-settled, however, that there is no blanket prohibition on employment of certain types of professionals, including financial advisors, on terms that include indemnification for negligence. *In re Joan and David Halpern Inc.*, 248 B.R. 43, 46 (Bankr. S.D.N.Y. 2000), *aff'd* No. 00 Civ. 3601, 2000 U.S. Dist. LEXIS 17589, 2000 WL 1800690 (S.D.N.Y. Dec. 6, 2000); *In re Baltimore Emergency Serv. II, LLC*, 291 B.R. 382, 383 (Bankr. D. Md. 2003)("The indemnification of a financial advisor to a Chapter 11 debtor is not, per se, an unreasonable term of employment under 11 U.S.C. Section 328(a)."). *But see In re Drexel Burnham Lambert Group Inc.*, 133 B.R. 13, 27 (Bankr. S.D.N.Y. 1991)(holding indemnification of investment banker/advisor is *per se* inappropriate). Indeed, in the wake of the settlement of a $185 million lawsuit against accountants advising an estate in the *In re Merry-Go-Round Enterprises, Inc.* case, the Third Circuit Court of Appeals notes that "indemnification of financial advisors against their own negligent conduct is becoming a common market occurrence." *In re United Artists Theatre Co.*, 315 F.3d 217, 229 (3d Cir. 2003). Rather, the standard, as applicable to all other terms of engagement of professionals,

-5-

15-33448-maw    Doc 185    FILED 03/29/16    ENTERED 03/29/16 12:29:47    Page 5 of 8

is whether the provision is a reasonable term of employment. *Id.*; *In re LTV Steel Co., Inc.,* 2001 U.S. Dist. LEXIS 25338, at *4.

The court agrees with Bank that the indemnification provision is not a reasonable term of employment in this particular case. *In re Comdisco, Inc.*, Case Nos. 02 C 1174 and 02 C 1397(consolidated), 2002 U.S. Dist. LEXIS 17994, 2002 WL 31109431 (N.D. Ill. Sept. 23, 2002)(reasonableness of indemnity for professional advisors depends on the facts of each case). While the ongoing professional fees for proposed services to be rendered by Numbers Group are eminently reasonable and within the Debtor's current ability to pay as an administrative expense, the costs of an indemnification claim for professional negligence, including the time and expense of Missal and Numbers Group's own engaged professionals, in addition to any damages, would sink the Debtor or reorganized debtor. There is a reason cash collateral has been contested at every turn here: the margins are thin. A plan for repaying existing creditors through restructuring (Bank proposes a liquidation) has not yet been presented, and as Missal would likely attest, any plan is likely to rely for feasibility on necessary tangible improvements in business operations and tight projections. Repaying existing creditors is not a given at this point. Layering an indemnification claim onto the existing business in this case could very well kill it, even if something else does not. In short, while the court finds that Debtor can afford its proposed financial advisor's services, it cannot afford the risk of indemnifying its financial advisor. *In re Thermadyne Holdings Corp.*, 283 B.R. 749, 755-56 (B.A.P. 8th Cir. 2002)(factors "such as market conditions, current economic conditions, and the potential economic costs to the estate" impact evaluation of the reasonableness of an indemnification provision in a particular case). Simply put, this business cannot bear the weight of an indemnification claim. The court questions whether Numbers Group would realistically be able to enforce and recover on the indemnification provision in any event, and thus the benefit of it to the financial advisor other than as a possible *in terrorem* deterrent to certain claims of negligence.

Only two creditors have been active in this case thus far, the Bank and an entity called Equity Management Group, LLC, which contends it is also a secured creditor and has filed a motion for relief from stay. There is no unsecured creditors' committee. The likelihood of a claim against Numbers Group in this case from a third party appears limited. In that regard, the court finds that Debtor has not shown the necessity of including an indemnification provision among the terms of

Numbers Group's employment, particularly where Missal indicated at the hearing that it carries liability insurance against claims of negligence. *See In re Thermadyne Holdings Corp.*, 283 B.R. at 758 ("[T]here is not sufficient evidence that indemnity insurance would be unavailable to [financial advisor] or is too expensive to procure."); *In re Metricom*, 275 B.R. at 372 ("There is no evidence that insurance is either unavailable or prohibitively expensive."); *cf. In re Drexel Burnham Lambert Group Inc.*, 133 B.R. at 27 ('W]e know that investment bankers carry coverage to protect themselves from malpractice liability.").

Even if it is not generally unreasonable to include an indemnification provision among the terms of Numbers Group's employment, the court agrees with Bank that two specific aspects of the proposed indemnification provision are unreasonable. The indemnification provision in the engagement letter properly excludes indemnification for gross negligence or willful misconduct. Nevertheless the court agrees with Bank that the provision is overbroad, and finds it to be so in two respects.

First, the indemnification provision is broad enough to extend arguably to protection for breach of Missal's contractual obligations, not just claims by third parties. *See United Artists,* 315 F.3d at 234 (invalidating portion of indemnity provision in professional's retention agreement that arguably extended to protection for breach of contractual obligations, as it was "hardly an indemnity-eligible activity."). On the one hand, Numbers Group agrees to "[a]ppear when required or requested at proceedings in the US Bankruptcy Court" and is entitled to be compensated for fees and related expenses for doing so. On the other hand, under the indemnification provision, it would be appear that fees for its own counsel in such a circumstance would also be compensable by Debtor.

Second, in any action, whether brought by Debtor or a third party, indemnification would also include the fees, costs and expenses for the indemnified professional's own time in addressing a claim or other matter.

The court finds these aspects of the proposed indemnification provision overbroad and without demonstrated justification under the circumstances of this case, exposing Debtor to liability beyond the reasonable needs and risks attendant to this case and this business.

The court could strike the indemnification provision from the engagement letter altogether, as requested by Bank. But the court will not impose terms on the parties to which they have not

agreed. *Compare In re Asarco, L.L.C.*, 702 F.3d 250, 268 (5th Cir. 2012)("In disputes governed by § 328(a), the contractual agreement is supreme, and we shall enforce the contract as written") *with In re Federal Mogul-Global, Inc.*, 348 F.3d 390, 398-99 (3d Cir. 2003)(a bankruptcy court need not approve or reject an application as presented but may approve an application with modified terms that the court finds necessary to render the proposed employment reasonable)(citing *Zolfo-Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 261 (3d Cir. 1997)).

Based on the foregoing reasons and authorities, for good cause shown,

**IT IS ORDERED** that the Objection of Senior Secured Lender to Debtor's Application for An Order Authorizing (A) The Retention of the Numbers Group, LLC And Patricia Missal as Financial Advisor to the Debtor Nunc Pro Tunc to January 11, 2016,; and (B) Interim Payment Procedure [Doc. # 135] is **GRANTED** in part as set forth above; and

**IT IS FURTHER ORDERED** that Debtor is granted leave to file a revised form of engagement letter in support of and as a supplement to its Application for An Order Authorizing (A) The Retention of the Numbers Group, LLC And Patricia Missal as Financial Advisor to the Debtor Nunc Pro Tunc to January 11, 2016; and (B) Interim Payment Procedure [Doc. # 124], which submission shall be made on or before **April 8, 2016**, absent which the court will enter an order denying the Application; and

**IT IS FINALLY ORDERED** that any objections to any revised engagement letter for Numbers Group filed by Debtor must be filed on or before 3 business days from the filing of the document by Debtor, absent which the court will grant the Application on the terms set forth in the revised engagement letter without further notice or opportunity for hearing.

###